UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――

№ 09 Civ. 1160 (RJS)

―――――――――

FISCHER & MANDELL LLP,

Plaintiff,

VERSUS

CITIBANK, N.A.,

Defendant.

―――――――――

MEMORANDUM AND ORDER
June 22, 2009

―――――――――

RICHARD J. SULLIVAN, District Judge:

Plaintiff Fischer & Mandell LLP ("Plaintiff") brings this action against Defendant Citibank, N.A. ("Defendant"), alleging violations of the Electronic Fund Transfer Act of 1978 ("EFTA"), 15 U.S.C. § 1693 *et seq.*, and the Expedited Funds Availability Act of 1987 ("EFAA"), 12 U.S.C. § 4001 *et seq.*, as well as claims under New York state law for fraud, negligence, gross negligence, and breach of contract.

Before the Court are the Parties' cross-motions for summary judgment. Plaintiff moves for summary judgment in its favor on its state law breach of contract claim. Defendant moves for summary judgment to dismiss all of Plaintiff's claims. For the reasons that follow, the Court grants Defendant's motion in regard to the federal claims brought pursuant to the EFTA and the EFAA, and declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

I. B<small>ACKGROUND</small>[1]

Plaintiff is a limited liability partnership and law firm with its place of business in New York. (Compl. ¶ 3.) Defendant is a national banking association with its principal place of business in New York. (*Id.* ¶ 4.) Plaintiff is a depositor of Defendant, and is a so-called "CitiBusiness and Citibusiness Online customer" of Defendant. (Pl.'s 56.1 ¶ 1.) The Parties' relationship is governed by three contracts: the Citibusiness Client Manual, the Online User Agreement, and the Citibank Marketplace Addendum. (*Id.* ¶ 2; Def.'s 56.1 Response ¶ 2.)[2]

Plaintiff maintained at least two accounts with Defendant: (1) an Interest on Lawyer's Account ("IOLA"), also known as an Attorney Trust Account, in Plaintiff's name (the "IOLA Account") and (2) an Insured Money Market Account (the "Money Market Account"). (Pl.'s 56.1 ¶¶ 4, 14; Def.'s 56.1 ¶ 1.)

On January 15, 2009, Plaintiff deposited what appeared to be an official check (the "Check") into the IOLA Account. (Pl.'s 56.1 ¶ 5; Def.'s 56.1 ¶ 11.) The Check was purportedly drawn on the account of Crown Royal Venture, Inc. at Wachovia Bank, N.A. ("Wachovia"), and was made payable to Plaintiff in the amount of $225,351. (Pl.'s 56.1 ¶ 5; Def.'s 56.1 ¶ 11.) On that same day, Defendant's "Check Processing Unit" sent the Check to the Federal Reserve Bank for collection from Wachovia. (Def.'s 56.1 ¶ 12.)

On January 19, 2009, Plaintiff accessed the IOLA Account using the "Citibusiness Online System" (the "Online System") for the purpose of ascertaining whether all or a portion of the funds represented by the check were available for withdrawal. (Pl.'s 56.1 ¶ 6.) After viewing the account balance in the IOLA Account, Plaintiff, via the Online System, requested a wire transfer of $182,780 to an account in the name of Efficiency Investment at Hana Bank in Seoul, Korea. (*Id.* ¶ 9; Def.'s Response ¶ 9; Def.'s 56.1 ¶ 13.)

On January 20, 2009, the next banking day,[3] Defendant executed the requested wire transfer, and charged a $20 fee. (Pl.'s 56.1 ¶ 10; Def.'s Response ¶ 10; Def.'s 56.1 ¶ 13.) The following day, on January 21, 2009, Plaintiff accessed its IOLA Account through the Online System, and was advised that the available account balance was $61,232. (Pl.'s 56.1 ¶ 11; Def.'s 56.1 ¶ 13.) Later that same day, Plaintiff requested through the Online System a second wire transfer of $27,895 to an account in the name of Kin Ming Lo at TD Canada Trust Bank in Toronto, Canada. (Pl.'s 56.1 ¶ 12; Def.'s Response ¶ 12; Def.'s 56.1

---

[1] The following facts are taken from the pleadings, the Parties' Local Rule 56.1 Statements, the affidavits submitted in connection with the instant motion, and the exhibits attached thereto. The facts are undisputed unless otherwise noted. Where only one Party's 56.1 Statement is cited, the facts are taken from that Party's statement, and the other Party does not dispute the fact asserted or has offered no admissible evidence to refute that fact.

[2] The Parties have submitted different versions of the Citibusiness Client Manual: Plaintiff's version of the Citibusiness Client Manual is "[e]ffective January 15, 2009" (*see* Fischer Decl. Ex. D), while Defendant's version of the Citibusiness Client Manual is "[e]ffective April 27, 2007" (*see* Glickman Decl. Ex. B). The differences between these two versions of the Citibusiness Client Manual, and the details surrounding the various contracts, are not relevant to the Court's decision here.

[3] January 19, 2009 was Martin Luther King, Jr. Day, a banking holiday. (Def.'s 56.1 ¶ 13.)

14.) Defendant executed the second requested wire transfer, again deducting a $20 fee. (Pl.'s 56.1 ¶ 13; Def.'s Response ¶ 13; Def.'s 56.1 ¶ 14.)

On the same day, January 21, 2009, the Check was determined to be a counterfeit, and was returned as dishonored and unpaid from the Federal Reserve Bank of Philadelphia. (Def.'s 56.1 ¶ 15; *see also* Pl.'s Mem. at 2.) Thereafter, on January 21, 2009, Defendant debited the IOLA Account in the face amount of the Check together with a $10 returned check fee, which resulted in an overdraft. (Def.'s 56.1 ¶ 16.) Defendant mailed copies of the returned Check, and also mailed "debit advice" to Plaintiff. (*Id.*) Further, a representative of Defendant telephoned Plaintiff and notified it that the check was returned as unpaid. (*Id.* ¶ 17.) As a result of the overdraft, on January 28, 2009, Defendant exercised its "Right of Set-Off" and offset the amount of the overdraft in the IOLA Account by deducting $225,351 from the Money Market Account. (*Id.*; Pl.'s 56.1 ¶ 14.)[4]

Plaintiff initiated this action by filing its complaint on February 2, 2009. Defendant filed its answer on March 9, 2009. Without conducting any discovery, the Parties filed their cross-motions for summary judgment on May 15, 2009, and their reply memoranda on June 5, 2009.

## II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a court may not grant a motion for summary judgment unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 492 F.3d 89, 96 (2d Cir. 2007). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see Anderson*, 477 U.S. at 248 (holding that summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); *Rivkin v. Century 21 Teran Realty LLC*, 494 F.3d 99, 103 (2d Cir. 2007). As such, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

---

[4] The Citibusiness Client Manual stipulates that: "The law allows us [Defendant] to use the money from any account held by the owners to pay any overdraft or debt that the business owes us. This is called the 'Right of Set-Off.'" (Def.'s 56.1 ¶ 5.)

### III. DISCUSSION

Relying on the undisputed facts set forth above, Plaintiff argues that Defendant has violated the EFTA, the EFAA, and various provisions of state law. Specifically, Plaintiff's claims are premised on the general theory that Defendant has "carelessly and cavalierly breached its obligation to its customer to advise the customer correctly as to an accurate available balance," and that this breach "directly caused the [P]laintiff's loss." (Pl.'s Mem. at 2.) In other words, Plaintiff seeks to hold Defendant legally responsible for the losses that it incurred due to its reliance on a check that was later returned as dishonored and unpaid.

For the reasons stated below, the Court grants Defendant's motion for summary judgment as to the federal claims brought pursuant to the EFTA and the EFAA. With all federal claims in this action dismissed, the Court dismisses the remaining pendent state law claims for lack of subject matter jurisdiction. The Court will discuss each of these findings in turn.

#### A.  EFTA Claim

##### 1.  Applicable Law

The EFTA "provide[s] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b). In enacting the EFTA, Congress delegated to the Board of Governors of the Federal Reserve System (the "Board") the authority and responsibility to "prescribe regulations to carry out the purposes" of the Act. 15 U.S.C. § 1693b(a). In particular, the Board has promulgated certain administrative regulations codified at 12 C.F.R. § 205 ("Regulation E").

The relevant substantive provision of the EFTA provides that:

> [A] financial institution shall be liable to a *consumer* for all damages proximately caused by —
>
> (1) the financial institution's failure to make an *electronic fund transfer*, in accordance with the terms and conditions of an *account,* in the correct amount or in a timely manner when properly instructed to do so by the consumer, except where — (A) the *consumer's account* has insufficient funds; . . . .
>
> (2) the financial institution's failure to make an *electronic fund transfer* due to insufficient funds when the financial institution failed to credit, in accordance with the terms and conditions of an *account*, a deposit of funds to the *consumer's account* which would have provided sufficient funds to make the transfer, and
>
> (3) the financial institution's failure to stop payment of a preauthorized transfer from a *consumer's account* when instructed to do so in accordance with the terms and conditions of the *account*.

15 U.S.C. § 1693h(a) (emphases added) (citation omitted).

The EFTA and Regulation E contain several relevant definitions that limit the reach of this substantive provision. First, the statute defines a "consumer" as a "natural person."

4

*See* 15 U.S.C. § 1693a(5). Second, the statute defines "account" as "a demand deposit, savings deposit, or other asset account . . . established primarily for personal, family, or household purposes." *See* 15 U.S.C. § 1693a(2). Accordingly, the EFTA does not apply to accounts that are used primarily or solely for commercial purposes. *Cf. Regatos v. North Fork Bank*, 257 F. Supp. 2d 632, 638 n.10 (S.D.N.Y. 2003) (finding that "[t]he EFTA governs wire transfers to and from bank accounts 'established primarily for personal, family, or household purposes,'" and that, since "the purpose of the account in question was purely commercial," "the EFTA [was] inapplicable" (quoting 15 U.S.C. § 1693a(2)).

Regulation E defines an "electronic fund transfer" as "any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account." 12 C.F.R. § 205.3(b)(1). Despite this broad definition, "checks" and "wire or other similar transfers" are explicitly excluded from the definition of "electronic fund transfer." Specifically, Regulation E provides:

> (c) Exclusions from coverage. The term electronic fund transfer does not include:
>
> (1) Checks. Any transfer of funds originated by check, draft, or similar paper instrument; or any payment made by check, draft, or similar paper instrument at an electronic terminal.
>
> (3) Wire or other similar transfers. Any transfer of funds through Fedwire or through a similar wire transfer system that is used primarily for transfers between financial institutions or between businesses.

12 C.F.R. §205.3(c).

### 2. Analysis

Plaintiff presents no argument in any of its moving papers as to why Defendant's motion for summary judgment as to the EFTA claim should not be granted, and in fact, declines to address the EFTA claim at all. Regardless, granting Plaintiff all of the inferences to which it is entitled, the Court finds that there are no disputed issues of material fact that preclude the finding of summary judgment in favor of Defendant in regard to Plaintiff's claim brought pursuant to the EFTA.

First, the Court finds that the EFTA does not apply to the account at issue here, the IOLA Account. As noted, the EFTA only applies to the accounts of "natural persons," "established primarily for personal, family, or household purposes." *See* 15 U.S.C. § 1693a(2). The IOLA Account is an "Attorney Trust Account," which, by definition, is an account that is established purely for commercial reasons. *See Schmidt v. Fleet Bank*, Nos. 96 Civ. 5030 (AGS) *et al.*, 1998 WL 47827, at *2 n.4 (S.D.N.Y. Feb. 4, 1998) ("An IOLA, a creation of New York State statute, is an unsegregated interest-bearing deposit account for the deposit by an attorney of certain funds received by the attorney in a fiduciary capacity from a client or beneficial owner."). (*See also* Pl.'s 56.1 ¶ 4 ("As part of its Citibusiness relationship with [D]efendant, [P]laintiff maintained an IOLA Attorney Trust Account.").)

Second, Regulation E explicitly excludes from the coverage of the EFTA transfers of

funds made through checks and wire transfers. Here, there is no dispute that each of the transactions at issue was made through checks and wire transfers — the initial deposit was through a check, and the subsequent withdrawals were through wire transfers. (*See* Pl.'s 56.1 ¶¶ 5, 9-10, 12-13; Def.'s Response ¶¶ 9-10, 12-13; Def.'s 56.1 ¶¶ 11–14.)

Finally, even if the Court *were* to find that the EFTA applies to the IOLA Account, Plaintiff fails to even *allege* a *prima facie* violation of the EFTA, which, as set forth above, involves a "financial institution's failure to make an electronic fund transfer, in accordance with the terms and conditions of an account." 15 U.S.C. § 1693h(a). Plaintiff does not allege that Defendant failed to make any of the requested transfers; rather, Plaintiff alleges, *inter alia*, that it "was unreasonable and an error within the meaning of the Electronic Fund Transfer Act for Defendant to make the funds represented by the [C]heck available to Plaintiff before the [C]heck had cleared and had been paid on by the payor bank, since Defendant had no legal compulsion to do so." (Compl. ¶ 30; *see also id.* ¶¶ 27-34.) By alleging that Defendant's actions constitute a violation of the EFTA in this case, Plaintiff seeks to distort the plain language of the statute and convert the EFTA into a guarantee provision for account holders. By so doing, Plaintiff has failed to even state a proper claim for relief pursuant to the EFTA.

For all of the foregoing reasons, the Court grants Defendant's motion for summary judgment as to Plaintiff's EFTA claim.

B.  EFAA Claim

1.  Applicable Law

"The purpose of [the EFAA] is to provide faster availability of deposited funds." *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 565 (S.D.N.Y. 2007). The Board has implemented the EFAA by promulgating Regulation CC. *See* 12 C.F.R. § 229.1(a).

The EFAA and Regulation CC set forth various time schedules by which banks must make deposited funds available. *See* 12 U.S.C. § 4002; 12 C.F.R. §§ 229.10, 229.12. As is relevant to this case, Regulation CC provides that, "[a] depositary bank *shall* make funds deposited in an account by check available for withdrawal not later than the business day after the banking day on which the funds are deposited" in certain enumerated instances. 12 C.F.R. § 229.10(c)(1) (emphasis added).

This requirement however does not apply to deposits of one or more checks if the aggregate dollar amount of those checks exceeds $5,000. *See* 12 C.F.R. § 229.13(b) ("Sections 229.10(c) and 229.12 do not apply to the aggregate amount of deposits by one or more checks to the extent that the aggregate amount is in excess of $5,000 on any one banking day."). In such a situation, the depository bank is no longer required to make funds available for withdrawal by the next business day after the funds are deposited. Rather, "the depositary bank *may* extend the time periods . . . by a *reasonable period of time*." 12 C.F.R. § 229.13(h)(1) (emphasis added).

6

2. Analysis

Plaintiff's argument in support of its claim brought pursuant to the EFAA proceeds in two steps. First, Plaintiff argues that the "reasonable time" exception is applicable to this case, given that the aggregate value of its deposits exceeded $5,000.[5] (Pl.'s Mem. at 5-6.) Second, Plaintiff argues that Defendant violated the EFAA because it "[i]t certainly would have been eminently '*reasonable*' . . . for [Defendant] to have waited for the Check to have been paid on or returned unpaid before declaring the funds 'available.'" (*Id.* at 6 (emphasis added).)

Little analysis is needed to reject Plaintiff's argument here. The statutory scheme sets forth two relevant requirements regarding making deposited funds available: (1) generally, funds must be available for withdrawal no later than the next business day after the funds are deposited, and (2) if the deposited funds exceed $5,000, then the depositary bank *may* extend that time period by a "reasonable period of time." The extension of time by the depositary bank in the latter situation is explicitly couched in permissive, not mandatory, language. Thus, nothing in the EFAA *requires* that a depositary bank make deposited funds in excess of $5,000 available at any date certain. More to the point, there is certainly *no* requirement in the EFAA that depositary banks must wait for a check to "have been paid or returned unpaid before declaring the funds 'available.'" (Pl.'s Mem. at 6). As the court noted in *Lynch v. Bank of America, N.A.*, 493 F. Supp. 2d 265 (D.R.I. 2007):

> [A]s long as depository institutions comply with its notice provisions, [the] EFAA does not make banks liable for their customers' checks. Customers of banks, in other words, withdraw money early at their own peril. EFAA requires institutions to make the funds available, but it does not require a bank to effectively become a guarantor of the check in the process.

*Id.* at 269. This Court concurs with the *Lynch* court's plain reading of the statute.

Furthermore, as noted, the purpose of the instructively titled "*Expedited Funds Availability Act*" is to "provide faster availability of deposited funds." *Haas*, 497 F. Supp. 2d at 565. This purpose is evinced, for example, through the statutory requirement that banks generally make deposits available on the "next business day." *See* 12 C.F.R. § 229.10(c). Plaintiff's disingenuous interpretation of the EFAA would require banks, in all situations in which the aggregated dollar amount of deposited checks exceeds $5,000, to *wait* an indeterminate amount of time until the checks are honored before making funds available. While it is certainly within the realm of contemplation that Congress would enact a statute that directed banks not to make funds available until checks are honored, the Court rejects Plaintiff's attempt to categorize the EFAA as such a statute.

Accordingly, the Court grants Defendant's motion for summary judgment in regard to Plaintiff's EFAA claim.

---

[5] The Check was in the amount of $225,351. (Pl.'s 56.1 ¶ 5; Def.'s 56.1 ¶ 11.)

7

### C. Remaining State Law Claims

There is no "diversity of citizenship" under 28 U.S.C. § 1332 in this case. (*See* Compl. ¶¶ 3, 4.) Thus, the only plausible basis for subject matter jurisdiction in this case is "arising under" jurisdiction provided by 28 U.S.C. § 1331. With Plaintiff's only two federal claims dismissed, the Court dismisses Plaintiff's remaining pendent state claims for lack of subject matter jurisdiction.

Under 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over the other claims if the district court has dismissed all claims over which it has original jurisdiction." "[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice." *Ricci v. DeStefano*, 530 F.3d 88, 122 (2d Cir. 2008) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *cf. Castellano v. Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

Although the Court notes that Plaintiff's state law claims appear to be of dubious merit, given that no discovery has been conducted, and given that the majority of Plaintiff's claims are brought pursuant to state law, the Court finds it appropriate to decline to exercise its supplemental jurisdiction in this case. Accordingly, the Court dismisses Plaintiff's remaining state law claims without prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment in regard to the federal claims brought pursuant to the EFTA and the EFAA, and declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Accordingly, the motions located at docket numbers 11 and 15 shall be terminated. The Clerk of Court shall enter judgment accordingly and this case shall be closed.

SO ORDERED.

/RICHARD J. SULLIVAN
United States District Judge

Dated: June 22, 2009
New York, New York

\* \* \*

Plaintiff is appearing in this matter on a *pro se* basis. Defendant is represented by Barry Jay Glickman, Zeichner Ellman & Krause LLP, 575 Lexington Avenue, New York, New York 10022.

8